## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRYELL JONES**                         **CIVIL ACTION**

**VERSUS**                                 **NO. 22-2210**

**ARNOLD HOLLEY, JR. ET AL.**              **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 35). Oral argument was held on January 25, 2024. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

This case arises out of a motor vehicle accident that occurred on January 20, 2022, in Orleans Parish, Louisiana. Plaintiff Terryell Jones alleges that she was driving a 2019 Volkswagen Jetta eastbound on Interstate 10 and was struck from behind by a 2009 Peterbilt 365, owned by Defendant Dana Transport, Inc. and operated by Defendant Arnold Holley, Jr. Plaintiff alleges that Holley struck the left rear corner of her vehicle and that the force of the accident made her hit a concrete barrier to her left. Plaintiff further alleges that Holley negligently operated the vehicle and was within the course and scope of his employment with Defendant Dana Transport at the time of the collision. Defendant National Union Fire Insurance Company issued a policy of insurance to Defendant Dana Transport at the time of the incident.

Plaintiff filed suit in the Civil District Court for the Parish of Orleans on May 10, 2022. On July 18, 2022, Defendants removed the case to this Court. Now before the Court is Defendants National Union Fire Insurance Company of Pittsburgh, PA; Dana Transport, Inc.; and Arnold Holley, Jr.'s Motion for Summary Judgment. Plaintiff opposes.[1]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[3] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6] Summary judgment is

---

[1] Doc. 44.
[2] Fed. R. Civ. P. 56.
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] *Id.* at 248.
[5] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[6] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).

appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[8] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because their conduct was not the cause-in-fact of Plaintiff's injuries and because they did not breach a duty owed to her. Plaintiff argues that material issues of fact remain for trial as to the breach and cause-in-fact elements. This diversity action is governed by Louisiana tort law.[11]

"Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La. Civ. Code art. 2315."[12] Under this analysis,

---

[7]  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[8]  Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9]  Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10]  Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[11]  Gasperini v. Ctr. for Humanities, Inc., 518 U,S, 415, 427 (1996).
[12]  Prisonneault v. Merchants & Farmers Bank & Trust Co., 816 So. 2d 270, 275–76 (La. 2002).

a plaintiff must prove five separate elements: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injurie; and (5) actual damages.[13]

"A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[14] The Court therefore considers whether materials issues of fact remain as to breach and cause-in-fact.

## 1. Breach

"Whether a duty is owed is a question of law; whether defendant has breached a duty owed is a question of fact."[15] The parties discuss two potential duties imposed—the duty of a following driver and the duty of a motorist making a lane change. Generally, following drivers have a duty to "maintain a sufficient distance from a preceding vehicle to avoid a collision 'under the circumstances.'"[16] This duty and resulting presumption in favor of the preceding motorist does not apply, however, "when there is a change of lanes by a motorist immediately preceding an accident."[17] In this situation, "the burden of proof is on the motorist changing lanes to show that it was first

---

[13] *Id.* (citing Roberts v. Benoit, 605 So. 2d 1032 (La. 1991); Fowler v. Roberts, 556 So. 2d 1, 4 (La. 1989); Mundy v. Dep't of Health & Human Res., 620 So. 2d 811 (La. 1993); Thomas C. Galligan, Jr., *A Primer on the Patterns of Negligence*, 53 LA. L. REV. 1509, 1510 (1993)).

[14] Pottinger v. Price, 289 So. 3d 1047, 1055 (La. App. 1st Cir. 2019) (citing Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 632–33 (La. 2006)).

[15] Brewer v. J.B. Hunt Transport, Inc., 35 So. 3d 230, 241 (La. 2010) (citing *Mundy*, 620 So. 2d at 813).

[16] Daigle v. Mumphrey, 691 So. 2d 260, 262 (La. App. 4th Cir. 1997) (citing Hadley v. Doe, 626 So. 2d 747, 750 (La. App. 5th Cir. 1993)). *See also* LA. REV. STAT. § 32:81.

[17] *Brewer*, 35 So. 3d at 243 (citing Barrociere v. Batiste, 752 So. 2d 324, 327 (La. App. 4th Cir. 2000); Graham v. Edwards, 614 So. 2d 811, 816 (La. App. 2d Cir. 1993); Averna v. Indus. Fabrication & Marine Serv., Inc., 562 So. 2d 1157, 1160 (La. App. 4th Cir. 1990)).

ascertained that the movement could be made safely."[18] "[A] greater burden of care is required for the motorist changing lanes than is demanded of a driver proceeding at a lawful rate on a straight line in a marked lane."[19]

In this case, the parties do not dispute that Plaintiff changed lanes just before the collision.[20] Defendants therefore argue that Plaintiff bears the burden at trial of proving she ascertained that the lane change could be safely made before executing it, and there is no genuine issue of material fact as to whether she made that determination before changing lanes. Defendants offer a video recording of the collision and various excerpts from Plaintiff's deposition testimony to carry their burden. Defendants point to Plaintiff's testimony that (1) at the time of the deposition, she could not recall how far the Peterbilt 365 was behind her when she executed the lane change; (2) she was looking in the sideview mirror for an opening to merge into the right lane after she was established in the middle lane; and (3) based upon the dashcam video recording of the collision, she did not feel that there was sufficient distance between her vehicle and the 18-wheeler to safely change lanes.

The Court finds that the video recording and portions of Plaintiff's deposition testimony cited by Defendants do not support the finding that, at the time of the collision, Plaintiff failed to make a determination that it was safe to change lanes before she did so. Plaintiff testified multiple times that, at the time she executed the lane change, she believed "there wasn't an 18-wheeler close" to her.[21] It was only after being shown the video that Plaintiff

---

[18] *Brewer*, 35 So. 3d at 243 (citing *Barrociere*, 752 So. 2d at 327; *Graham*, 614 So. 2d at 816; *Averna*, 562 So. 2d at 1160).

[19] *Id.* at 241.

[20] *See, e.g.*, Doc. 35-1 at 2; Doc. 44 at 7–9.

[21] *See, e.g.*, Doc. 35-5 at 13–15. Plaintiff states multiple times throughout her deposition that she changed lanes because she felt that she was "in the clear," which she later clarified meant that she believed that "there wasn't an 18-wheeler close to [her] when [she changed lanes." *Id.*

expressed doubts. In light of the conflicting evidence presented to this Court, the factual finding that Plaintiff made a determination that it was safe at the time she executed the lane change remains for a jury to decide.

The Court also notes that, at the beginning of the video recording, Holley was engaged in a lane change. Assuming Holley would face a shifting burden to prove that he did not breach any duty owed to Plaintiff, the Court finds material the statement by Defendants' expert that Holley "may have seen the roof" approximately three seconds before the collision and that, by taking his foot off the gas, Holley could have slowed down a comparable speed to Plaintiff.[22] Accordingly, this Court finds that Defendants fail to carry their burden to show that no material issue of fact remains as to the breach element, and summary judgment must be denied.

### 2. *Cause-in-fact*

Defendants argue that their conduct was not a cause-in-fact of Plaintiff's injuries because her "admitted unsafe maneuvering so close in proximity to an 18-wheeler in inclement weather was the sole and proximate cause of the collision between the vehicles."[23] In support of these arguments, Defendants offer the deposition testimony of Dana Trucking, Inc., through its representative Eugene Patten, and an affidavit signed by Eric Burson, Defendants' expert accident reconstructionist.[24] Plaintiff, however, argues that Holley was the cause-in-fact of the collision. Plaintiff further argues that Dana Trucking, Inc.'s factual determination that Plaintiff was the "sole cause" of the accident would not be admissible at trial and that Eric Burson's testimony and expert opinions are mischaracterized by Defendants.

---

[22] Doc. 44-4 at 32, 36. Burson stated that the difference between Plaintiff's and Defendant Holley's speeds was approximately 1–2 miles per hour. Doc. 44-4 at 19.
[23] Doc. 35-1 at 17.
[24] *See* Doc. 35-1 at 3–4.

"A party's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm" or if "the harm would have not occurred without it."[25] "While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability."[26] "Whether an action is the cause-in-fact of the harm is a factual determination that is left to the factfinder."[27] The relevant, limited inquiry for courts is whether the defendant contributed to the plaintiff's harm.[28]

In support of this Motion, Defendants offer the expert opinion of Eric Burson that Plaintiff's "unsafe lane change and deceleration so close to the front of the Peterbilt are the causative factors in this case" and Defendant Dana Transport's testimony, through its corporate representative, that Plaintiff was driving in Holley's blind spots.[29] The fact that a plaintiff's negligence continues up to the accident, however, does not preclude a finding that the defendant was also a cause-in-fact of the accident.[30] In her memorandum in opposition, Plaintiff offers Eric Burson's deposition testimony that Defendant Holley could have seen Plaintiff's car before she merged into the center lane for about 1.6 seconds and that Holley would have thereafter had 3.5 seconds to react before Plaintiff merged or disappeared into his blind spot.[31] Because a motor vehicle operator's "failure to see what they could have

---

[25] Toston v. Pardon, 874 So. 2d 791, 799 (La. 2004) (citing Netecke v. State ex rel. Dep't of Transp. & Dev., 747 So. 2d 489, 497–98 (La. 1999)). *See also* Roberts v. Benoit, 605 So. 2d 1032, 1042 (La. 1991).

[26] *Netecke*, 747 So. 2d at 498 (citing Theriot v. Lasseigne, 640 So. 2d 1305, 1310 (La. 1994); Dixie Drive It Yourself Sys. v. Am. Bev. Co., 137 So. 2d 298, 302 (La. 1962)).

[27] *Toston*, 747 So. 2d at 799.

[28] *Roberts*, 605 So. 2d at 1042.

[29] Doc. 35-1 at 16–18; Doc. 35-9 at 3.

[30] *See* Jackson v. Cook, 181 So. 195, 197 (La. 1938) ("[T]he last clear chance doctrine applies even though plaintiff's negligence continues up to the accident."). *See also* Howard v. Fidelity & Cas. Co. of N.Y., 179 So. 2d 522 (La. App. 3d Cir. 1965) (applying "last clear chance doctrine" to a motor vehicle collision case).

[31] Doc. 44-4 at 34–35.

seen by the exercise of due diligence does not absolve them from liability" under Louisiana law, a material issue of fact remains as to whether Defendant Holley was a cause-in-fact of the collision.[32]

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 35) is **DENIED**.

New Orleans, Louisiana this 30th day of January, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[32] *Jackson*, 181 So. at 197. The Court need not address Defendants' motions to strike because it did not consider Exhibits E, F, and G attached to Plaintiff's memorandum in opposition (Doc. 45) in making the foregoing conclusions.